UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NICOLE NASH,<br><br>                Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN,<br><br>                Defendant. | NO:  14-CV-3059-FVS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 13 and 18. This matter was submitted for consideration without oral argument. Plaintiff was represented by D. James Tree. Defendant was represented by Jeffrey R. McClain. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 1

**JURISDICTION**

Plaintiff Nicole Nash protectively filed for supplemental security income ("SSI") and disability insurance benefits on November 16, 2010. Tr. 98-99. Plaintiff alleged an onset date of July 12, 2009. Tr. 227, 229. Benefits were denied initially and upon reconsideration. Tr. 161-164, 169-180. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Virginia M. Robinson on September 14, 2012. Tr. 42-97. Plaintiff was represented by counsel and testified at the hearing. Tr. 48-72. Vocational expert Scott Whitmer also testified. Tr. 72-96. The ALJ denied benefits (Tr. 18-41) and the Appeals Council denied review (Tr. 1). The matter is now before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 32 years old at the time of the hearing. Tr. 48. She obtained her GED and did not attend special education classes. Tr. 257. Plaintiff previously worked as a customer service representative, sales supervisor/lead sales representative, short order cook, cashier, janitor, waitress, front office worker/receptionist, and general clerk. Tr. 51-52, 74-75. Plaintiff claims she is

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

1    disabled due to a broken left foot and mood disorder. *See* Tr. 169. She testified that

2    she does childcare, basic cooking, and home maintenance with the help of her

3    boyfriend and three children. Tr. 49-50. She drives her children to school, and goes

4    to appointments or the store, but otherwise doesn't leave the house. Tr. 69-70.

5    However, Plaintiff testified that she has to elevate her leg above her heart for more

6    than half of her waking hours, to keep the swelling down in her foot and calf. Tr.

7    53-54. She cannot stand for more than 10 minutes at a time. Tr. 56. Plaintiff

8    testified that she is in pain "every day, all the time," does not sleep well, gets

9    migraine headaches, recently had surgery due to kidney and gall stones, and feels

10   "guilty or worthless" all the time. Tr. 57-61.

11                              **STANDARD OF REVIEW**

12           A district court's review of a final decision of the Commissioner of Social

13   Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

14   limited: the Commissioner's decision will be disturbed "only if it is not supported

15   by substantial evidence or is based on legal error." *Hill v. Astrue,* 698 F.3d 1153,

16   1158–59 (9th Cir.2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means

17   relevant evidence that "a reasonable mind might accept as adequate to support a

18   conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently,

19   substantial evidence equates to "more than a mere scintilla[,] but less than a

20   preponderance." *Id.* (quotation and citation omitted). In determining whether this

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 3

standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir.2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders,* 556 U.S. 396, 409–10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 4

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4) (i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § § 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5

preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a) (4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416 .920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § § 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 6

1  C.F.R. §§ 404.1520(a)(4)(v); 416.920(a) (4)(v). In making this determination, the

2  Commissioner must also consider vocational factors such as the claimant's age,

3  education and work experience. *Id.* If the claimant is capable of adjusting to other

4  work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § §

5  404.1520(g)(1); 416.920(g) (1). If the claimant is not capable of adjusting to other

6  work, the analysis concludes with a finding that the claimant is disabled and is

7  therefore entitled to benefits. *Id.*

8       The claimant bears the burden of proof at steps one through four above.

9  *Lockwood v. Comm'r of Soc. Sec. Admin.,* 616 F.3d 1068, 1071 (9th Cir.2010). If

10  the analysis proceeds to step five, the burden shifts to the Commissioner to

11  establish that (1) the claimant is capable of performing other work; and (2) such

12  work "exists in significant numbers in the national economy." 20 C.F.R. § §

13  404.1560(c); 416.960(c)(2); *Beltran v. Astrue,* 700 F.3d 386, 389 (9th Cir.2012).

14  ALJ'S FINDINGS

15       At step one, the ALJ found Plaintiff has not engaged in substantial gainful

16  activity since July 12, 2009, the alleged onset date. Tr. 23. At step two, the ALJ

17  found Plaintiff has the following severe impairments: status post fractured left foot,

18  mild edema bilateral lower extremities, major depressive disorder, posttraumatic

19  stress disorder ("PTSD"), opioid dependence, and attention deficit hyperactivity

20  disorder ("ADHD"). Tr. 23. At step three, the ALJ found that Plaintiff does not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 7

have an impairment or combination of impairments that meets or medically equals

one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1. Tr. 25. The

ALJ then found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)
> except: occasional operation of foot controls with the left lower extremity;
> occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds;
> occasional stooping, kneeling, crouching or crawling; avoid concentrated
> exposure to extreme cold, excessive vibrations, and workplace hazards such
> as dangerous machinery or unprotected heights; simple to moderately
> complex work with only simple work-related decisions; and only superficial
> contact with the public.

Tr. 27. At step four, the ALJ found Plaintiff is unable to perform any past relevant

work. Tr. 35. At step five, the ALJ found that considering the Plaintiff's age,

education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform. Tr. 35. The ALJ

concluded that Plaintiff has not been under a disability, as defined in the Social

Security Act, from July 12, 2009, through the date of this decision. Tr. 36.

## ISSUES

The question is whether the ALJ's decision is supported by substantial

evidence and free of legal error. Specifically, Plaintiff asserts: (1) the ALJ

committed reversible error by finding Plaintiff not credible; (2) the ALJ committed

reversible error by rejecting the opinions of Plaintiff's treating and examining

medical providers: Jesse McClelland, M.D., J.W. Lyzanchuk, D.O., and Michele

Ahlbrecht, P.T.; (3) the ALJ's hypothetical question failed to adequately capture

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 8

the opinion evidence to which the ALJ gave significant weight. ECF No. 13 at 6-20. Defendant argues: (1) the ALJ reasonably evaluated Plaintiff's credibility; (2) the ALJ reasonably weighed the medical opinion and other source evidence; and (3) the ALJ's vocational hypothetical was supported. ECF No. 18 at 3-20.

## DISCUSSION

### A. Credibility

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908; 416.927. A claimant's statements about his or her symptoms alone will not suffice. *Id*. Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir.1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

testimony." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir.2002). In making this determination, the ALJ may consider, *inter alia:* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.* Absent any evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue,* 688 F.3d 661, 672 (9th Cir.2012) (quotation and citation omitted). [1]

 Plaintiff argues that the ALJ improperly found Plaintiff not credible. ECF No. 13 at 17-20. The ALJ found "that the claimant's medically determinable

---

[1] Defendant argues that this court should apply a more deferential "substantial evidence" standard of review to the ALJ's credibility findings. ECF No. 18 at 4. The court declines to apply this lesser standard. As noted by Plaintiff, the Ninth Circuit recently reaffirmed in *Garrison v. Colvin* that "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so;" and further noted that "[t]he governments suggestion that we should apply a lesser standard than 'clear and convincing' lacks any support in precedent and must be rejected." ECF No. 20 at 1-4 (citing *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014)).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 10

impairments could reasonably be expected to cause some of the alleged symptoms. There is evidence of record, however, that the claimant may not be as limited in the ability to function as she alleged." Tr. 29. The ALJ listed multiple reasons in support of this adverse credibility finding.

First, the ALJ found evidence of activities suggesting Plaintiff is not as limited in the ability to function as she alleged. Tr. 29. Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). It is well-settled that a claimant need not be utterly incapacitated in order to be eligible for benefits. *Id.*; *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities…does not in any way detract from her credibility as to her overall disability."). However, there are two grounds for using daily activities to form the basis of an adverse credibility determination. *See Orn*, 495 F.3d at 639. First, the daily activities may contradict claimant's other testimony. *Id.*; *Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). Second, daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his or her day engaged in pursuits involving the

1    performance of physical functions that are transferable to a work setting. *Orn*, 495

2    F.3d at 639.

3        Plaintiff argues that the ALJ fails to establish that Plaintiff's daily activities

4    take up a substantial part of the day or are transferable to the work setting. ECF

5    No. 13 at 19-20; ECF No. 20 at 14-15. However, as noted above, transferability to

6    the work setting is only *one* of the grounds for discrediting Plaintiff's testimony.

7    *See Orn*, 495 F.3d at 639.  In this case, as noted by Defendant, the ALJ properly

8    relied on the alternate ground for discrediting Plaintiff's testimony, namely, the

9    extent that her daily activities contradict claims of a totally debilitating

10   impairment. *See Molina*, 674 F.3d at 1113. Plaintiff testified that she has to elevate

11   her leg above heart level for more than half her waking hours (Tr. 54); she can only

12   stand for ten minutes at a time (Tr. 56); she is in pain "every day, all the time" (Tr.

13   57); she doesn't "go outside" to play with her kids (Tr. 61); and she doesn't ever

14   leave the house unless it's to go to an appointment or the store, or to drive her

15   children to school (Tr. 69). However, as cited by the ALJ, records show that in

16   2009 Plaintiff traveled to Seattle on a bus as an escort for her children's school day

17   trip. Tr. 541. Plaintiff consistently identified her occupation as "homemaker,"

18   which the ALJ inferred as "suggesting she was choosing to stay home to raise her

19   children rather than due to an inability to work." Tr. 29, 480, 570, 580, 723. In

20   April 2010 and January 2011, Plaintiff reported being active with her children.  Tr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 12

723, 762. In July 2011, she reported taking care of her kids, fixing dinner for her family at night, and discussed being in an upcoming wedding. Tr. 892. The court notes that the ALJ's citation to Plaintiff's own testimony regarding her ability to regularly obtain methadone and attend medical appointments, does not appear to contradict her other testimony or her claims of a totally debilitating impairment. *See* Tr. 29. However, while evidence of Plaintiff's daily activities may be interpreted more favorably to the Plaintiff, "where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Moreover, even if the ALJ erred in her reasoning as to Plaintiff's daily activities, any error is harmless because, as discussed below, the remaining reasoning and ultimate credibility finding is adequately supported by substantial evidence. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Second, the ALJ cites Plaintiff's history of opiate dependence, and reports of drug-seeking behavior, as a reason to discount Plaintiff's credibility. Tr. 29. Evidence of drug seeking behavior may be considered when assessing credibility. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). In support of this reasoning, the ALJ cites Plaintiff's report in 2008 that she has used morphine, Percocet, Vicodin, and Adderal; and at one point she was taking 40 Vicodin a day. Tr. 846. Also in 2008, Plaintiff reported that she was taking 5-10 Vicodin a day

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13

and did not believe that was a problem; and she admitted to purchasing Vicodin on the street if she did not have a prescription. Tr. 840, 844. Plaintiff's mental health records are also replete with references to Plaintiff's admission that she has a long history of chemical dependency, and opiate drugs have been her primary difficulty. *See, e.g.*, Tr. 826.

      As an initial matter, the court notes that evidence of historical dependence on opiate painkillers *by itself*, does not equate to evidence of drug seeking behavior. In this case, the ALJ does not cite to any inconsistencies or lack of candor about Plaintiff's history of opiate dependence to support the adverse credibility finding. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies in the record regarding substance abuse supported adverse credibility finding). However, the ALJ does properly support this reasoning by citing multiple reports of drug-seeking behavior in the form of exaggeration of symptoms. Tr. 29-30; *Edlund*, 253 F.3d at 1157 (ALJ properly considered evidence of exaggeration of pain to receive pain medication in credibility assessment).[2] In

---

[2] In her reply brief, Plaintiff argues in great detail that the facts of the instant case are distinguishable from *Edlund*. ECF No. 20 at 6-12. However, while the *Edlund* case is informative, this court's analysis is limited to whether, based on the entirety of the record *in this case*, the ALJ provided clear and convincing reasons, supported by substantial evidence, to find the Plaintiff not credible.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14

2008, prior to the alleged onset date, Plaintiff reported to the emergency room seeking care for flank pain due to alleged kidney stones; however, records note that she "did not appear to be in a lot of pain" and she became "upset and angry" and left against medical advice after being offered antibiotics instead of pain medication. Tr. 367-68, 380.  In 2009, Plaintiff was examined by a podiatrist who noted Plaintiff's "reaction exceeds any clinical findings that I can find on today's exam." Tr. 456. At a visit several weeks later, the podiatrist again noted Plaintiff was "quite hyperreactive" on exam. Tr. 454. At this same visit, after being informed that "there was not any evidence clinically that warranted pain medication," Plaintiff went into a "tirade" and after continued verbal abuse she was threatened with arrest. Tr. 454. The ALJ also notes that although Plaintiff denied requesting pain medication at this visit, the record shows she subsequently called the clinic to request pain medication. Tr. 491, 630. The court also notes that in August 2010, a provider at Orthopedics Northwest noted that "[i]t is hard to really perform a proper assessment given the fact that [Plaintiff] has a pain response to all examination maneuvers even areas that have not been definitely injured." Tr. 530.

Plaintiff argues that the "ALJ's application of this rationale is inconsistent and disingenuous because it does not credit [Plaintiff's] more recent admissions of having a problem and efforts to reduce her use of pain medication." ECF No. 13 at 18-19. However, the ALJ acknowledges Plaintiff's admission of difficulty with

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 15

1    opiate addiction in the past, and her testimony that she is doing well on the

2    methadone program and taking medication only as prescribed. Tr. 29-32.

3    Moreover, regardless of whether the ALJ is able to cite instances of drug-seeking

4    behavior after Plaintiff started treatment, or whether the Plaintiff has an alternate

5    explanation for her behavior, the evidence as a whole is susceptible to more than

6    one rational interpretation, and therefore the ALJ's conclusion must be upheld.

7    *Burch*, 400 F.3d at 679. Finally, in her reply brief, Plaintiff argues that existence of

8    a pain syndrome, diagnosed by several providers and suggested as possible by

9    others, "cause[s] significant pain and explain why [Plaintiff] was fighting for

10   adequate pain relief from prescribed medications." ECF No. 20 at 7-9. However,

11   the ALJ was able to cite multiple instances in which medical providers noted

12   Plaintiff's behavior and/or objective findings were inconsistent with pain

13   complaints; and at least one instance where Plaintiff became agitated seemingly in

14   response to not receiving pain medication, and later denied asking for pain

15   medication. *See Thomas,* 278 F.3d at 958 (Plaintiff's reputation for truthfulness is

16   proper factor to consider when determining credibility). For all of these reasons,

17   evidence of drug-seeking behavior was a clear and convincing reason, supported

18   by substantial evidence, for the ALJ to find Plaintiff not credible.

19          Finally, while not identified or challenged by Plaintiff in her briefing, the

20   ALJ generally found that "the lack of objective medical evidence [] diminishes the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 16

reliability of the claimant's subjective complaints." *See Carmickle*, 533 F. 3d at 1161 n.2 (the court need not address issue not argued with specificity in Plaintiff's brief). Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ found that "[w]hile the claimant has a severe left foot impairment and evidence of bilateral edema, there is no objective medical evidence to support the alleged limiting effects of these impairments." Tr. 30. As cited by the ALJ, Plaintiff sought care for swollen legs and ankles in July 2009, but over the course of the next few visits her primary doctor noted that although Plaintiff still reported pain, the swelling was less and there was mild improvement. Tr. 30, 484, 487-88. In August of 2009, a podiatrist noted Plaintiff had 1 to 2+ edema of the left ankle, but also found extreme guarding on range of motion, no evidence of dislocation, negative anterior and posterior drawer sign, adequate dorsiflexion and plantarflexion, and a neurosensory examination was in normal limits. Tr. 456. At the same visit, it was also noted that Plaintiff's "reaction exceeds any clinical findings that I can find on today's exam." Tr. 456 (capital letters omitted). Bone imaging tests conducted in August 2009 indicated a recent fracture of the left second metatarsal and a probable contusion within the left great toe joint. Tr. 455. However, the podiatrist found no clinical findings to warrant

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 17

prescribing pain medication, and suggested evaluating Plaintiff at a pain clinic as "it was difficult to diagnose and differentiate from the underlying psychological needs." Tr. 454.

As noted by the ALJ, records indicate that Plaintiff had an abnormal gait and walked on her heel; and in early 2010 edema was noted again, and compression stockings were recommended in addition to medication. Tr. 509, 516. However, in February 2010 an MRI of Plaintiff's left foot was unremarkable, and identified no etiology for Plaintiff's symptoms. Tr. 532, 606. In June 2010, records show no edema in Plaintiff's extremities, although she is noted to walk with an antalgic gain. Tr. 616. In August 2010, x-rays show good structure and no fractures. Tr. 531. Also in August 2010, Plaintiff was examined at a bone and joint clinic, and it was noted that she has a "pain response to all examination maneuvers even areas that have not been definitely injured; and "no objective findings other than significant pain response." Tr. 530. In December 2010, a repeat bone scan showed the injury to her foot was now normal. Tr. 610. In January 2011and September 2011, records note mild peripheral edema in her bilateral lower extremities. Tr. 608, 937. The ALJ's decision acknowledges sporadic but ongoing findings of peripheral edema in Plaintiff's lower legs, and consistent reports of pain by Plaintiff in the same area. Tr. 22-23. However, the ALJ properly reasons that "[w]hile the medical evidence shows the claimant has severe physical impairments,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 18

1    there is no evidence to support the alleged severity of her foot pain from her healed

2    foot fracture …. Furthermore, there is no medical evidence of ongoing edema that

3    is severe the claimant would need to elevate her legs throughout the day." Tr. 31.

4        Similarly, the ALJ found that "[w]hile the medical evidence supports that

5    Plaintiff has mental impairments, it does not support the decreased mental

6    functioning alleged by Plaintiff." Tr. 32. In support of this finding, the ALJ notes

7    that Plaintiff attended individual therapy sessions, and was prescribed medication

8    to treat her mental health symptom, including methadone for her opiate

9    dependence. *See generally,* Tr. 710-853. In November 2009, Plaintiff reported that

10   she felt stabilized on her mental health medication and "no longer needs individual

11   therapy." Tr. 787, 791, 793. In December 2009, Plaintiff reported that her

12   depression, anxiety, and panic attacks were reduced; and a mental status

13   examination described her as alert, oriented, cooperative, pleasant and full ranging

14   affect, showed no change in memory or cognition, and her insight and judgment

15   were good. Tr. 787, 789. In December 2010, she reported doing "pretty well" on

16   her mental health medication. Tr. 729. In In March 2011, Plaintiff reported that her

17   "bipolar" was not limiting her daily activity and she was taking her medication as

18   prescribed. Tr. 714. The court notes that in May 2011, Plaintiff reported severe

19   symptoms that allegedly affected her daily functioning; and she was diagnosed by

20   Dr. McClelland with severe major depressive disorder, PTSD, and ADHD. Tr. 885.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 19

However, as noted by the ALJ, the objective testing results of the mental status examination performed by Dr. McClelland were almost entirely unremarkable, including: polite and cooperative behavior; linear and goal directed thought process; intact remote memory; 3/3 immediate three object recall; 3/3 recall after five minutes; able to name last five presidents; able to do simple calculations; able to spell world forward and backwards; intact abstract thinking; and judgment and insight is fair. Tr. 884.

As cited in detail above, the lack of corroboration of Plaintiff's testimony in the objective record was properly considered by the ALJ, as it did not form the sole basis for the adverse credibility finding. Moreover, "where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch*, 400 F.3d at 679; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)("[t]he ALJ is responsible for determining credibility"). For all of these reasons, and having thoroughly reviewed the record, the court concludes that the ALJ supported his adverse credibility finding with specific, clear and convincing reasons supported by substantial evidence.

## B. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

1  [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

2  *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001)(citations omitted).

3  Generally, a treating physician's opinion carries more weight than an examining

4  physician's, and an examining physician's opinion carries more weight than a

5  reviewing physician's. *Id.*  If a treating or examining physician's opinion is

6  uncontradicted, the ALJ may reject it only by offering "clear and convincing

7  reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d

8  1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's

9  opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

10  providing specific and legitimate reasons that are supported by substantial

11  evidence." *Id.* (citing *Lester v. Chater,* 81 F.3d 821, 830–831 (9th Cir.1995)).

12  Plaintiff argues the ALJ improperly rejected the opinions of Plaintiff's treating and

13  examining providers: Jesse McClelland, M.D., Dr. J.W. Lyzanchuk, and Michele

14  Ahlbrecht, P.T. ECF No. 13 at 10-17.

15  **1.  Dr. Jesse McClelland**

16  In May 2011, Plaintiff underwent a psychiatric consultative examination

17  conducted by Dr. Jesse McClelland. Tr. 881-886. Dr. McClelland diagnosed

18  Plaintiff with major depressive disorder, severe, recurrent, without psychotic

19  features; PTSD, chronic; ADHD, combined type; cannabis dependence, full

20  sustained remission; and rule out opioid dependence and currently on maintenance

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 21

and a pain contract. Tr. 885. In the "discussion" section of the evaluation Dr.

McClelland found that Plaintiff's

> problems taken on a limited basis are treatable; however, she has multiple
> psychiatric problems and multiple medical problems as well as a history of
> drug dependence…. The presence of multiple psychiatric disorders worsens
> her prognosis for each as does the presence of her multiple medical
> problems, particularly chronic pain and hypothyroidism, which can have
> profound impacts on mood state. She may show some improvement within
> the next 12 months if she has aggressive management with a combination of
> medications and appropriate psychotherapy.

Tr. 885. Dr. McClelland further opined that, based on psychological symptoms

only, Plaintiff should not be managing her funds due to her history of addition and

ADHD; should be able to perform simple and repetitive tasks, but "may struggle"

with detailed and complex tasks; "may struggle" to accept instructions from

supervisors; "may struggle" to interact with coworkers and the public; "may take"

longer than normal to learn a new job, "but seems to be capable in the past of

performing work without special or additional instruction;" would struggle to

maintain regular attendance; would struggle to complete a normal

workday/workweek without interruptions; and would struggle "to deal with the

usual stress encountered in the workplace." Tr. 885-86.

    The ALJ accorded "little weight" to Dr. McClelland's opinion for several

reasons. First, the ALJ rejected Dr. McClelland's opinion because "it was so

heavily based on the claimant's self-reports while the claimant's self-reports

regarding the severity of her symptoms are not reliable." Tr. 32. "An ALJ may

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 22

reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Plaintiff argues that Dr. McClelland "draws on his expert knowledge of psychological disorders," and contends that the ALJ failed to consider Dr. McClelland's comment that Plaintiff's combination of psychological and physical impairments creates "an especially severe problem." ECF No. 13 at 11-12. As an initial matter, Plaintiff's argument that the ALJ erred by failing to "explain why Dr. McClelland's opinion is wrong" is misplaced. ECF No. 20 at 15-16. It is well-settled that the court does not require a special "incantation" by the ALJ when rejecting a medical opinion. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). Instead, in a case like this, where the medical opinion is contradicted, the ALJ is only required to offer specific and legitimate reasons, supported by substantial evidence. *Bayliss,* 427 F.3d at 1216. Dr. McClelland's report incorporated Plaintiff's self-report of the "history of present illness," including her statement that she was diagnosed with bipolar and has had severe depression *which has been treated* since she was twelve years old. Tr. 881 (emphasis added). Plaintiff also reported nightmares, problems sleeping, irritability, distrustfulness, panic attacks, fear of abandonment, attempted suicide, and a long history of substance abuse. Tr. 881-82. She reported on her family

1    history, activities of daily living, and it was noted that her concentration,

2    persistence and pace were within normal limits. Tr. 883.

3         As noted by the ALJ, in stark contrast to these self-reports, Dr. McClelland's

4    mental status examination includes almost entirely "normal" or unremarkable

5    results, including: normal concentration, persistence, and pace; well-groomed and

6    good hygiene, polite and cooperative with good eye contact; thought process is

7    linear and goal directed; speech is fluent with normal rate; denies suicidal or

8    homicidal ideation, alert and oriented to person, place, and time; three object

9    repetition is 3/3; three object recall after five minutes is 3/3; remote memory intact;

10   able to name last five presidents and knows states that border Washington; able to

11   do simple calculations; able to spell world forward and backward; intact abstract

12   thinking; and judgment and insight are fair. Tr. 883-84. Only one portion of the

13   mental status exam indicated that Plaintiff's "affect is depressed and constricted."

14   Tr. 884. Thus, the court agrees with Defendant that "[b]ecause the mental status

15   examination did not support the degree of limitation assessed, the ALJ reasonably

16   inferred Dr. McClelland's opinion was based on Plaintiff's non-credible self-

17   report." ECF No. 18 at 10 (citing *Batson v. Comm'r of the Soc. Sec. Admin*., 359

18   F.3d 1190, 1193 (9th Cir. 2004) ("the Commissioner's findings are upheld if

19   supported by inferences reasonably drawn from the record.")). This was a specific

20   and legitimate reason for the ALJ to reject Dr. McClelland's opinion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 24

1    Second, the ALJ found that the severity of the limitations assessed by Dr.

2    McClelland was inconsistent with the overall evidence of record. Tr. 33.

3    Specifically, aside from one "anger incident with a doctor in the context of

4    [Plaintiff's] drug-seeking, the majority of her records are otherwise unremarkable

5    by her regular treating provider, [and] similarly inconsistent with the records of her

6    long-term mental health provider wherein she largely reports stability on her

7    mental health medication regimen." Tr. 33. The consistency of a medical opinion

8    with the record as a whole is a relevant factor in evaluating that medical opinion.

9    *See Orn*, 495 F.3d at 631; *see also Holohan,* 246 F.3d at 1201–02 (treating

10   physician's opinion generally carries more weight than an examining physician's).

11   As noted by the ALJ, the majority of Plaintiff's records from her treating physician

12   are unremarkable and almost entirely without mention of mental health symptoms.

13   *See* Tr. 32-33, 634-709, 936-965. Moreover, records from her long-term mental

14   health treating provider "largely report stability on her mental health medical

15   regimen." Tr. 33, 710-880. The court notes that longitudinal mental health records

16   during the adjudicatory period contain sporadic notes of irritability (Tr. 728, 742),

17   a "slight" sad mood (Tr. 743, 766), and sleep problems (Tr. 757, 782). However,

18   the court's review of these records confirms that they almost entirely confirm that

19   Plaintiff is "doing well" and not changing her mental health medications or

20   support. *See e.g.*, Tr. 729, 737, 762, 791, 810, 833. The inconsistencies between

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 25

1   the overall record, and the more severe limitations assessed by Dr. McClelland,

2   was a specific and legitimate reason to reject the medical opinion.

3          Finally, the ALJ found "the findings from Dr. McClelland's own mental

4   status examination (such as intact memory and concentration) do not support the

5   severity of impairment set out in the opinion." Tr. 33. An ALJ may reject a

6   physician's opinion if it is not supported by his or her own treatment notes. *See*

7   *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Thomas*, 278

8   F.3d at 957 ("[a]n ALJ need not accept the opinion of a doctor if that opinion is

9   brief, conclusory, and inadequately supported by clinical findings."). Plaintiff

10  argues that "[i]nstead of attempting to address the substance of Dr. McClelland's

11  opinion, the ALJ merely substitutes her own opinion for his." ECF No. 13 at 12.

12  Plaintiff is correct that it is inappropriate for the ALJ to substitute her own medical

13  judgment for that of a medical professional. *See Tackett v. Apfel*, 180 F.3d 1094,

14  1102-03 (9th Cir. 1999); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.

15  1996) (ALJ "must not succumb to the temptation to play doctor and make [his or

16  her] own independent medical findings"). However, the ALJ *is* responsible for

17  "resolving conflicts in medical testimony, and for resolving ambiguities."

18  *Andrews*, 53 F.3d at 1039. Here, the ALJ did not substitute her own interpretation

19  of the medical evidence for that of Dr. McClelland; nor did the ALJ make

20  independent medical findings. Rather, as discussed in detail above, the ALJ

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 26

properly resolved that the largely normal and unremarkable results of the mental

status examination performed by Dr. McClelland did not appear to adequately

support the severity of the limitations assessed. Tr. 883-886.  Moreover, even if Dr.

McClelland's examination results could be interpreted more favorably to Plaintiff,

"where evidence is susceptible to more than one rational interpretation, it is the

[Commissioner's] conclusion that must be upheld." *Burch*, 400 F.3d at 679. This

was a specific and legitimate reason for the ALJ to reject Dr. McClelland's

opinion.

**2.  J.W. Lyzanchuk, D.O.**

During the relevant adjudicatory period, Plaintiff's treating provider, Dr.

Lyzanchuk, completed six functional reports addressing Plaintiff's limitations. The

ALJ assigned each of Dr. Lyzanchuk's opinions "little weight" for specific

reasons; and the court will examine each opinion in turn, in accordance with the

ALJ's decision.

In October 2009, several months after the alleged precipitating injury to

Plaintiff's foot, Dr. Lyzanchuk opined that Plaintiff was "severely limited" and

hand wrote "presently" after that checked box. Tr. 494. Dr. Lyzanchuk noted that

"specific issues need further evaluation or assessment," including "time limits"

because the "improving trend so far has been slow." Tr. 494. The ALJ granted this

opinion "little weight" for several reasons. First, the ALJ found objective evidence

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 27

did not support the severity of these findings. Tr. 33. An ALJ may discredit

treating source opinions that are unsupported by the record as a whole or by

objective medical findings. *Batson*, 359 F.3d at 1195. Here, imaging results in July

2009 found "no detectable signs of fracture, subluxation, or other radiographic

abnormality" in Plaintiff's left foot or ankle. Tr. 485. In August 2009, a bone

imaging study revealed a probable recent fracture in Plaintiff's left second

metatarsal, a contusion within the left big toe, and no findings in the ankle. Tr. 489,

454. Moreover, as noted by the ALJ, the podiatrist's examination  in August 2009

indicated 1 to 2+ edema in the left ankle, but no evidence of dislocation, negative

anterior and posterior range of motion, no evidence of dislocation, adequate

dorsiflexion, plantarflexion, no excessive inversion or eversion, and no

appreciation of fracture or dislocation. Tr. 456. The podiatrist also noted that

Plaintiff's reactions exceeded clinical findings upon examination, recommended

conservative treatment for three weeks, and found insufficient clinical findings to

warrant prescribing pain medication. Tr. 454-56. The ALJ properly notes that the

severity of Plaintiff's limitations, as opined by Dr. Lyzanchuk, is not consistent

with these "minimal findings" by the podiatrist. Tr. 33; *see Orn*, 495 F.3d at 631

(the amount of relevant evidence that supports a medical opinion is a relevant

factor in evaluating that opinion). Plaintiff generally argues that this was an

insufficient reason to reject Dr. Lyzanchuk's opinion, however, she only offers

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 28

allegedly conflicting objective evidence dated *after* the October 2009 opinion. ECF No. 13 at 14-15; *See Carmickle*, 533 F. 3d at 1161 n.2 (the court need not address issue not argued with specificity in Plaintiff's brief). Second, the ALJ found that during this period, the severity of Dr. Lyzanchuk's opinion was inconsistent with his treatment notes. Tr. 33. An ALJ may reject a physician's opinion if it is not supported by his or her own treatment notes. *Tommasetti*, 533 F.3d at 1041. In support of this reasoning, the ALJ cites Dr. Lyzanchuk's consistent reports of improvement in Plaintiff's swelling and his recommendation that Plaintiff should wear a walking boot. Tr. 487-88, 491-92, 496. Plaintiff argues that Dr. Lyzanchuk's recommendation of a walking boot is not inconsistent with his assessed limitations. ECF No. 13 at 15. However, where, as here, the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679.

In February 2010, Dr. Lyzanchuk again opined that Plaintiff would be "unable to participate" in work due to "limitations of activity that require standing, walking, and sitting without elevating foot." Tr. 504. Dr. Lyzanchuk also noted that Plaintiff was seeing a podiatrist and going to the pain clinic; and opined that Plaintiff was limited in "lifting and carrying" to sedentary work. Tr. 504. The ALJ found that "[t]he severity of this report is also unsupported" for several reasons. First, the ALJ noted that Dr. Lyzanchuk is "not a podiatrist or expert in feet." Tr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 29

33. Although not challenged in Plaintiff's briefing, the court notes that that it would be improper for the ALJ to reject Dr. Lyzanchuk's opinion solely based on this reasoning. *See Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987) (treating physician qualified to give medical opinion as to mental state despite not being a psychiatrist). However, it is reasonable for the ALJ to give more weight to the opinion of a podiatrist when evaluating Plaintiff's alleged foot problems. *See* 20 C.F.R. § 416.927 ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

In addition, the ALJ found that "the limitations appear largely based on the claimant's self-reports." Tr. 33. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. Plaintiff argues that the ALJ "has pointed to no evidence of which Dr. Lyzanchuk was unaware" and relied on records confirming that Dr. Lyzanchuk was copied on "most of the various treatment notes in the record." However, a review of Dr. Lyzanchuk's treatment records during this time included only one record regarding Plaintiff's range of motion, ability to walk, or any other independent testing, that would tend to confirm Plaintiff's complaints of foot pain. Tr. 484, 486-88, 491-92, 496, 509. While Dr. Lyzanchuk's treatment notes do mention swelling in Plaintiff's lower

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 30

extremity particularly around the time of her precipitating injury (Tr. 484, 486-88, 496, 501) and decreased range of motion and impaired ambulation at one visit (Tr. 509); the consistent improvement in the amount of swelling (Tr. 486-88, 496) and lack of independent testing by Dr. Lyzanchuk, support the ALJ's reasonable inference that Dr. Lyzanchuk's opinion was largely drawn from Plaintiff's self report, which, as discussed in detail above, was properly found not credible. *See Molina*, 674 F.3d at 1111 (if evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). Finally, similar to Dr. Lyzanchuk's previous report in 2009, the ALJ properly found that there was no objective evidence to support Dr. Lyzanchuk's finding that Plaintiff could not do even one hour of work per week. *See Batson*, 359 F.3d at 1195. As above, Plaintiff generally argues that this was an insufficient reason to reject Dr. Lyzanchuk's opinion, however, she only offers allegedly conflicting objective evidence dated *after* the February 2010 opinion. ECF No. 13 at 14-15; *See Carmickle*, 533 F. 3d at 1161 n.2 (the court need not address issue not argued with specificity in Plaintiff's brief). For all of these reasons, the ALJ did not err in finding that "[w]hile it might be reasonable to limit the amount she could carry with her reported abnormal gait and documented foot impairment, this does not equate with an inability to perform any work activity." Tr. 33.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 31

In September 2010, January 2011, and December 2011, Dr. Lyzanchuk completed additional reports regarding Plaintiff's limitations, and similarly opined that she was "unable to participate" due to limitations of activity that require standing, walking, and sitting without elevating her foot. Tr. 658, 683, 908. In each of these evaluations, Dr. Lyzanchuk also referred to awaiting completion of "work-up" by the pain clinic and further recommendations. Tr. 659, 683, 908. The ALJ rejected these opinions for several reasons. First, as discussed above, the ALJ found that there was no objective evidence to support the "extreme severity" of Dr. Lyzanchuk's opinion. *See Batson*, 359 F.3d at 1195. Plaintiff argues this reasoning is "not supported by the evidence as a whole" because Plaintiff was diagnosed with complex pain disorder of the left foot by Dr. Lyzanchuk; and "left foot pain" and "likely… nociceptive pain" by Dr. Brett Quave. ECF No. 13 at 14-15. However, as noted throughout the ALJ's decision, there was not a consensus among Plaintiff's treating physicians about the cause of her foot pain. Dr. Lyzanchuk's treatment records consistently note a diagnosis of complex regional pain disorder, however, in November 2010 Dr. Quave found "no signs of any complex regional pain syndrome" and instead opined that it was "likely" she was "dealing with nociceptive pain." Tr. 612. Dr. Lyzanchuk's diagnosis thus appears to be entirely based on a consulting podiatrist's assessment in February 2010 that Plaintiff had chronic regional pain syndrome. Tr. 606. The same podiatrist noted that "[t]here is

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 32

nothing further I can offer for treatment for her current situation." Tr. 606. In August 2010, another health care provider at a bone and joint clinic had "no explanation for her severe symptoms" and noted "it is hard to really perform a proper assessment given the fact that [Plaintiff] has a pain response to all examination maneuvers, even areas that have not been definitively injured." Tr. 530. He also noted "no objective findings other than significant excessive pain response." Tr. 530. Given the disparity of diagnoses, or lack thereof, among medical professionals, the court finds that the evidence is susceptible to more than one rational interpretation, and therefore the ALJ's reasoning was not in error. *See Molina*, 674 F.3d at 1111. Additionally, while not addressed by Plaintiff, the ALJ's reasoning is supported by objective tests during this time period, including: an unremarkable MRI in February 2010 noting no etiology for Plaintiff's symptoms (Tr. 532), and x-rays in August 2010 of the left foot showing good structure and no fracture or subluxations (Tr. 529). The lack of objective evidence to support these opinions was a legitimate and specific reason for granting them little weight.

Second, the ALJ noted Plaintiff's testimony that she can stand briefly to prepare meals, walk to her car daily, and take her children to school. Tr. 33, 50, 69-70. An ALJ may discount a medical source opinion to the extent it conflicts with claimant's report of daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Plaintiff argues that Dr. Lyzanchuk's assessed

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 33

limitations are not inconsistent with these activities because they do not require "consistent effort." ECF No. 13 at 15. However, the ALJ appears to have taken into account modifications of these daily activities, such as "briefly standing" to prepare meals. Tr. 33. It was reasonable for the ALJ to note that the extreme severity of Dr. Lyzanchuk's opinion, that Plaintiff was unable to lift more than 2 pounds or unable to stand or walk, was inconsistent with Plaintiff's daily activities of taking care of her family and household. Third, the ALJ noted that Dr. Lyzanchuk's own records "contain minimal findings such as limitation of motion of her ankle or toes, or decreased strength." Tr. 33 (citing 668, 679). An ALJ may reject a physician's opinion if it is not supported by his or her own treatment notes. *See Tommasetti*, 533 F.3d at 1041. As noted above, Dr. Lyzanchuk's treatment notes do not include any type of objective testing of Plaintiff's left foot; and only intermittently reference swelling or edema that is sometimes noted as "lesser" or "improved." *See* Tr. 636, 641-44, 648, 650-51, 654-55, 661, 665-68, 673-75, 679-81, 687, 693, 697-98, 900-902, 936-938, 942-44. This was a legitimate and specific reason to reject Dr. Lyzanchuk's opinion.

Finally, the ALJ noted that despite being copied on reports of drug-seeking behavior, and her participation in a methadone program, Dr. Lyzanchuk continued to prescribe hydrocodone to Plaintiff. Tr. 33. The ALJ found that this evidence "suggests the doctor was unaware or unconcerned about the claimant's self-

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 34

1    admission regarding her history of opiate abuse." Tr. 33. Plaintiff argues that the

2    ALJ is not a medical expert and "is not entitled to simply assert a contradictory

3    medical interpretation of facts from Dr. Lyzanchuk." ECF No. 13 at 15-16. The

4    court agrees. As noted above, it is not appropriate for the ALJ to substitute her own

5    medical judgment for that of a medical professional. *See Tackett*, 180 F.3d at 1102-

6    03. However, while it was error for the ALJ to comment on the medical judgment

7    of Dr. Lyzanchuk, the error was harmless because, as discussed above, the ALJ

8    articulated additional specific and legitimate reasons for rejecting Dr. Lyzanchuk's

9    opinion that were supported by substantial evidence.  *See Carmickle*, 533 F.3d at

10   1162-63.

11       For all of these reasons, and based on the court's comprehensive review of

12   the entire record, the court finds the ALJ offered specific and legitimate reasons for

13   rejecting each of Dr. Lyzanchuk's opinions.[3]

—————————————

14   [3] The ALJ also discussed Dr. Lyzanchuk's April 2012 "medical report" that

15   opined, similarly to all of the opinions discussed in this section, that due to

16   limitations in Plaintiff's ability to stand, walk, and sit; Plaintiff would miss more

17   than four days per month if attempting to work a forty hour work week. Tr. 33,

18   910-911. The ALJ granted the report "little weight for all of the reasons discussed

19   above," including relying heavily on Plaintiff's discounted self-reports "when the

20   objective evidence shows her fracture has healed." Tr. 33. As discussed in detail

### 3.  Michele Ahlbrecht, P.T.

In April 2010, Ms. Ahlbrecht wrote a discharge letter that noted Plaintiff's functional index score increased by 10%, and opined Plaintiff "is able to sleep a little better and participate more in daily/recreational activities, but still cannot lift or perform many work duties without increasing her symptoms as yet." Tr. 567. The ALJ gave "little weight" to Ms. Ahlbrecht's opinion for several reasons. Tr. 34.

First, the ALJ rejected Ms. Ahlbrecht's opinion because she is not an acceptable medical source. Tr. 34. Ms. Ahlbrecht is a social worker, and thus in accordance with 20 C.F.R. § 416.913(a), the ALJ is correct that she is not an "acceptable medical source." Instead, Ms. Ahlbrecht qualifies as an "other source" as defined in 20 C.F.R. § 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987). "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical

above, these reasons for rejecting Dr. Lyzanchuk's opinion are legitimate and specific.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 36

source'…. However, depending on the particular facts in a case, and after applying

the factors for weighing opinion evidence, an opinion from a medical source who

is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable

medical source.'" SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at

*5. Thus, while the ALJ may give less weight to Ms. Ahlbrecht's opinion because

it is not from an "acceptable medical source;" it would be error to reject Ms.

Ahlbrecht's opinion *solely* on this basis. In this case, however, any error is

harmless because the ALJ gave additional germane reasons for granting Ms.

Ahlbrecht's opinion little weight. *See Carmickle*, 533 F.3d at 1162-63.

     First, the ALJ noted that Ms. Ahlbrecht's opinion is "vague" and the phrase

"work activities" was not defined. Tr. 34. An ALJ need not accept the opinion of a

treating provider "if that opinion is brief, conclusory, and inadequately supported

by clinical findings." *Thomas*, 278 F.3d at 957. Here, Ms. Ahlbrecht's one page

discharge letter includes a single conclusory sentence regarding Plaintiff's

functional limitations, generally indicating that Plaintiff "still cannot lift or perform

many work duties…as yet." Tr. 567. Plaintiff appears to concede that this

statement was "not specific." ECF No. 13 at 17. Moreover, a statement from a

medical provider regarding Plaintiff's ability to work is not considered to be a

medical opinion, but is an administrative finding that would be dispositive of a

case, and is therefore an issue reserved to the Commissioner. *See* 20 C.F.R. §§

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 37

404.1527(d)(1) and (3); Soc. Sec. Ruling ("SSR") 96-5p, *available at* 1996 WL 374183 at *2 (July 2, 1996) ("treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").[4] This was a germane reason to reject Ms. Ahlbrecht's opinion.

Second, the ALJ found that Ms. Ahlbrecht's report "appears largely based on the claimant's self-report." Tr. 34. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. As an initial matter, the court notes that Plaintiff generally argues that there is "no basis" for

---

[4] As part of the ALJ's reasoning that Ms. Ahlbrecht's letter was vague, she noted "there is no evidence that [Ms. Ahlbrecht] has the expertise to determine [sic] the claimant could not perform work activities with her impairment nor were the work activities defined." Tr. 34. Plaintiff argues that this statement regarding Ms. Ahlbrecht's qualifications is "unfounded and speculative." ECF No. 13 at 17. It is somewhat unclear whether this remark by the ALJ was intended as part of the valid reasoning regarding the lack of specificity in Ms. Ahlbrecht's report. Regardless, any error regarding the ALJ's consideration of Ms. Ahlbrecht's qualifications was harmless because, as discussed in this section, the ALJ articulated additional germane reasons for rejecting Ms. Ahlbrecht's opinion that were supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 38

1   this finding merely because Ms. Ahlbrecht treated Plaintiff for a "significant"

2   amount of time. ECF No. 13 at 17; *See Carmickle*, 533 F.3d at 1161 n.2 (the court

3   need not address issue not argued with specificity in Plaintiff's brief). Moreover,

4   while Ms. Ahlbrecht's treatment notes include the results of ongoing clinical

5   testing performed as a part of physical therapy; it was reasonable for the ALJ to

6   infer that the opinion expressed in her April 2010 letter appeared to be based

7   entirely on Plaintiff's self-reports of being "able to sleep a little better and

8   participate more in daily/recreational activities, but still unable to lift or perform

9   many work duties without increasing her symptoms as yet." Tr. 567; *See Molina*,

10  674 F.3d at 1111 (if evidence in the record "is susceptible to more than one

11  rational interpretation, [the court] must uphold the ALJ's findings if they are

12  supported by inferences reasonably drawn from the record."). This was a germane

13  reason to grant little weight to Ms. Ahlbrecht's opinion.

14  **C. Hypothetical**

15      The ALJ may meet his burden of showing the claimant can engage in other

16  substantial activity at step five by propounding a hypothetical to a vocational

17  expert "that is based on medical assumptions supported by substantial evidence in

18  the record that reflects all the claimant's limitations. The hypothetical should be

19  'accurate, detailed, and supported by the medical record.'" *Osenbrock v. Apfel*, 240

20  F.3d 1157, 1165 (9th Cir. 2001). However, "[i]f an ALJ's hypothetical does not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 39

reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)(citation and quotation marks omitted).

Here, the ALJ assessed Plaintiff's RFC to include "only superficial contact with the public." Tr. 27. During the questioning of the vocational expert ("VE") at the hearing, the ALJ defined "superficial" as "interaction with the public that involves, for example, only giving or receiving simple instructions or requests, answering simple questions, providing directions or change, something of that nature; but not complex problem solving or complex sort of negotiations, remediation." Tr. 78. The VE then testified that three occupations "fit that hypothetical," including: charge account clerk, food and beverage order clerk, and surveillance system monitor. Tr. 77-78. The ALJ determined that the VE's testimony was consistent with information contained in the Dictionary of Occupational Titles ("DOT"), and based on that testimony the ALJ concluded Plaintiff was not disabled. Tr. 36.

Plaintiff argues that "the ALJ uses an unreasonable definition of 'superficial contact with the public['] that [sic] contradictions in opinion evidence in the record." ECF No. 13 at 7. Specifically, the ALJ granted Dr. Matthew Comrie's opinion "significant weight," and Dr. Comrie opined that Plaintiff's "reduced

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 40

stress tolerance requires work with limited social demands. She can be irritable and

volatile when under stress so requires limited public [sic] and allowed to work

without oppressive supervision." Tr. 110. According to Plaintiff, the ALJ erred by

failing to account for the limitation on social contact identified by Dr. Comrie in

the RFC and hypothetical because Dr. Comrie "stated [Plaintiff's] social

limitations *prevented* her from working with the public." ECF No. 13 at 8

(emphasis added). However, this argument misstates Dr. Comrie's opinion that

Plaintiff "requires work with *limited* social demands." Tr. 110 (emphasis added).

The court does not discern, nor does Plaintiff point to facts that would indicate any

meaningful difference between the ALJ's definition of "superficial contact" as

"giving and receiving simple instructions or requests;" and Dr. Comrie's opined

"work with limited social demands." As noted by Defendant, the tasks

contemplated by the ALJ in the definition of "superficial contact" do not appear to

require any unlimited or in-depth interaction with the public. ECF No. 18 at 18. If

anything, the ALJ's definition of "superficial contact" ensures that the hypothetical

is properly accurate and detailed. *See Osenbrock*, 240 F.3d at 1165. Additionally,

Plaintiff argues that there is "no medical opinion in the record which supports the

definition of 'superficial contact with the public' used by the ALJ." ECF No. 13 at

8. However, when considering the RFC assessment and corresponding hypothetical

proposed to the VE, an ALJ considers all relevant evidence in the case record, not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 41

just medical opinions. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). The court finds

the RFC and hypothetical question were supported by substantial evidence in the

record, and the ALJ properly relied on the VE's testimony at step five.

Finally, in a similar argument, Plaintiff briefly argues that the surveillance

monitor job "which involves public contact at a time of stress in the form of a

security breach," is inconsistent with Dr. Comrie's opinion that Plaintiff is

"irritable and volatile under stress so requires limited public [contact]." ECF No.

13 at 10 (citing Tr. 110). Plaintiff asks the court to presume, without offering any

authority, that "reaction to stress is particularly important" in this job. *Id*. However,

as noted by Defendant, the description of this job involves observing television

screens and notifying authorities only if there is need for corrective action. *See*

DOT 379.367-010, *available at* 1991 WL 673244. Dr. Comrie did not opine that

Plaintiff was limited to "low stress" jobs, rather, he noted a propensity to

irritability when under stress as a reason to limit her public contact. *See* Tr. 110. As

above, the court finds the ALJ properly accounted for the limitations opined by Dr.

Comrie in the RFC and hypothetical.

## CONCLUSION

After review the court finds the ALJ's decision is supported by substantial

evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 42

1.  Plaintiff's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 18, is

    **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** this 26th day of  June, 2015.

_s/Fred Van Sickle_
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 43